UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SOILA LLAPA,                                          CIV. NO. 13-1320(MJD/JSM)

       Plaintiff,                                    REPORT AND RECOMMENDATION

v.

U.S. BANK, NA, as Trustee for
CWMBS 2006-R2, et al.

       Defendants.

     The above matter came before the undersigned on Defendant's Motion to Dismiss [Docket No. 4].  This matter was decided on the parties' written submissions.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A),(B) and Local Rule 72.1(c) and the Amended Administrative Order issued by Chief Judge Michael J. Davis on October 11, 2013 [Docket No. 16].

     Plaintiff seeks to invalidate the foreclosure of the mortgage on her home.  Plaintiff asserts three claims against defendants: (1) quiet title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendant's[1] Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

---

[1]    In the caption of her Complaint, plaintiff also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

## I.      BACKGROUND

Plaintiff commenced this suit in Minnesota state district court on May 10, 2013. Notice of Removal, ¶1 [Docket No. 1].  Defendant U.S. Bank removed pursuant to 28 U.S.C. §1332(a)(1) (diversity).

The facts bearing on the motion to dismiss are as follows: Plaintiff acquired an interest in real property located in Minneapolis, Minnesota ("Property") by Warranty Deed dated May 13, 1998.  Complaint, ¶¶1, 2.  In connection with her acquisition of the Property, on April 28, 1998, plaintiff executed a note to and a mortgage in favor of North American Mortgage Corporation.  Id., ¶4, Ex. 1 (Mortgage).  On October 4, 1999, North American Mortgage Corporation assigned the mortgage to Mortgage Electronic Registration Services ("MERS").  Id., ¶6.  This assignment was signed by K. Templeman as Assistant Secretary and T. Carlson as Assistant Vice President of North American Mortgage Company and was recorded in the Hennepin County Recorder's office on February 2, 2000.  Id.; Ex. 2 (Assignment of Mortgage).

On August 27, 2009, U.S. Bank executed a Power of Attorney that authorized Wells Fargo Bank, N.A. ("Wells Fargo") to act as U.S. Bank's attorney-in-fact with respect to the Mortgage.  Defendant's Appendix [Docket No. 7-1], App. 1-3.  That Power of Attorney was recorded in the Hennepin County Recorder's office on August 27, 2009. Id.

On February 16, 2011, the mortgage was assigned by MERS to U.S Bank. Complaint, ¶7, Ex. 3 (Assignment of Mortgage).  Brenda Giesselmann, Assistant Secretary for MERS, executed this Assignment, which was recorded in the Hennepin County Recorder's office on March 10, 2011.  Id.  Plaintiff alleged that there is no "of-

record" evidence that Giesselmann "had the specific power" to sign the Assignment, "on information and belief" Giesselmann was actually an employee of U.S. Bank, and Minn. Stat. §580.05 required all powers of attorney be recorded prior to the commencement of the foreclosure process.  Id., ¶¶8, 9.

Plaintiff claimed that U.S. Bank securitized her loan into a mortgage-backed securitization entitled "CWMBS 2006-RS."  Id., ¶10.  The securitization process was governed by a Pooling and Servicing Agreement ("PSA") outlined in a Trust Agreement. Id., Ex. 4 (three-page excerpt from an unidentified PSA).  The securitization documents required that the parties create and deliver documents creating a "complete chain of title" from the loan originator, MERS, to U.S. Bank and the delivery of a "mortgage file" to the Trustee containing the original note, original or certified copy of the original mortgage and any assignments of the mortgage to prove a complete chain of title.  Id., ¶¶11-13.  The Trust Agreement empowered U.S. Bank, as Trustee, to foreclose.  Id., ¶14.  Neither the Trust Agreement nor any power of attorney was recorded, allegedly in violation of Minn. Stat. §580.05.  Id., ¶15.

On March 7, 2011, attorney Leah Weaver, with the law firm of Reiter & Schiller, signed a Notice of Pendency on U.S. Bank's behalf, which was recorded in the Hennepin County Recorder's office on March 10, 2011.  Id., ¶17; Ex. 5 (Notice of Pendency).[2]  Plaintiff alleged "on information and belief" that Weaver lacked signing authority and that there is no evidence of Weaver's power to execute foreclosure documents for U.S. Bank.  Id., ¶18.

---

[2]     Plaintiff labeled this document as a "POA" but it is not a power of attorney; it is a notice of pendency.  Complaint, ¶17; Ex. 5 (Notice of Pendency).

On March 24, 2011, Asahia Brooks, "Vice President of Loan Documentation for Wells Fargo Bank NA., attorney-in-fact for U.S. Bank National Association, as Trustee for CWMBS 2006-R2," signed a Power of Attorney, effective as of March 3, 2011, appointing Reiter & Schiller to foreclose the Property, which was recorded in the Hennepin County Recorder's office on May 25, 2011.  Id., ¶19; Ex. 6 (Power of Attorney).[3]  Plaintiff alleged "on information and belief" that Brooks lacked signing authority and that no power of attorney empowering Wells Fargo as attorney-in-fact for U.S. Bank was recorded.  Id., ¶20.

On December 30, 2011, attorney Steven Pennock with Reiter & Schiller signed a Notice of Pendency regarding the Property, which was recorded in the Hennepin County Recorder's office on January 4, 2012.  Id., ¶21, Ex. 7 (Notice of Pendency).[4]  Plaintiff pled "on information and belief" that Pennock lacked signing authority and there and is no evidence of Pennock's power to execute foreclosure documents on behalf of U.S. Bank.  Id., ¶22.  On December 30, 2011, Reiter & Schiller also noticed a sheriff's sale on the Property.  Id., ¶24.  The first date of publication of the notice was January 10, 2012.  Complaint, Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).  The sale was conducted on May 9, 2012.  Id., ¶24.

Reiter & Schiller, on U.S. Bank's behalf, bid $67,738.96 in debt allegedly owed to U.S. Bank.  Id., ¶24.  A Sheriff's Certificate of Sale and the foreclosure record was recorded in the Hennepin County Recorder's office on May 14, 2012.  Id., Ex. 8

---

[3]     Plaintiff described this document as a Notice of Pendency and Power of Attorney ("03/24/11 POA") but it is not a notice of pendency; it is only a power of attorney. Complaint, ¶19; Ex. 6 (Power of Attorney).

[4]     Plaintiff described this document as a Notice of Pendency and Power of Attorney ("12/30/11 POA") but it is not a power of attorney; it is a notice of pendency Complaint, ¶21; Ex. 7 (Notice of Pendency).

(Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiff alleged that U.S. Bank lacked the legal authority to bid at the Sheriff's sale or to exercise the power of sale because there existed unrecorded assignments of the mortgage.  Id.

On March 4, 2013, U.S. Bank executed a limited power of attorney empowering Wells Fargo to act as attorney-in-fact for U.S. Bank to perform several tasks, including preparation of a quit claim deed conveying the Property from U.S. Bank to Wells Fargo. Id., ¶25, Ex. 9 (Limited Power of Attorney).  On March 21, 2013, the Quit Claim Deed was signed by Sharon Glover, Vice President of Loan Documentation, "U.S. Bank National Association, as Trustee for CWMBS 2006-R2, by Wells Fargo Bank as Attorney in Fact."  Id., Ex. 9 (Quit Claim Deed).  Both the Limited Power of Attorney and Quit Claim Deed were recorded with the Hennepin County Recorder's office on April 24, 2013.  Id.  Plaintiff pled "on information and belief" that Glover lacked signing authority. Id., ¶26.

Plaintiffs claimed that on or about April 13, 2011, Wells Fargo and U.S.Bank entered into a Consent Order with the Officer of Comptroller of the Currency ("OCC") in which they did not contest that they had engaged in a variety of "unsafe and unsound" banking practices in conducting foreclosures.  Id., ¶ 27, Ex. 10 (Consent Order).[5] Plaintiff claimed that on or about April 13, 2011, Reiter & Schiller received constructive notice that Wells Fargo and U.S. Bank had engaged in "unsafe and unsound" banking practices regarding foreclosures.  Id., ¶27.

---

[5]     The Consent Order attached to the Complaint is between U. S. Bank National Association, Cincinnati Ohio, U.S. Bank National Association, ND, Fargo, N.D. and the Comptroller of the Currency of the United States.  Complaint, Ex. 9.  Wells Fargo was not a party to this Consent Order.

On March 28, 2013, Reiter & Schiller, on U.S. Bank's behalf, filed an eviction complaint to evict plaintiff from the Property.  Id., ¶31.  Plaintiff contended that the eviction was improper because Weaver did not have legal authority to execute the March 7, 2011 Power of Attorney; Reiter & Schiller had received constructive notice that U.S. Bank had engaged in "unsafe and unsound" banking practices regarding foreclosures; prior to the foreclosure sale, U.S. Bank had transferred the power of sale to Fannie Mae;[6] and the Quit Claim Deed was invalid because neither U.S. Bank nor Wells Fargo had any enforceable interest in the Proper.  Id., ¶32.

Plaintiff pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq.  This Count alleged that U.S. Bank's claim to an interest in the Property was void because: (1) there exists unrecorded assignments of mortgage conveying the mortgagee's power of sale to third parties; (2) U.S. Bank lacked the power of sale on the date of the sheriff's sale; and (3) the foreclosure was void because (a) individuals executing the foreclosure documents did not have the legal authority to execute the documents when signed, and (b) defendants did not record the necessary powers of attorney authorizing the foreclosure.  Id., ¶40.  Count I further alleged that in a quiet title action, U.S. Bank has the burden of proof and consequently, it must prove its interest in the Property by a preponderance of the evidence.  Id., ¶¶38, 39.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that the October 4, 1999 Assignment of Mortgage from North American Mortgage Company to

---

[6]     The Court has no idea what role, if any, Fannie Mae played in plaintiff's mortgage or Property as there are no allegations in or documents attached to the Complaint that make any mention of Fannie Mae.

MERS and the February 16, 2011 Assignment of Mortgage from MERS to U.S. Bank were void; the March 7, 2011 Notice of Pendency and March 24, 2011 Power of Attorney were void; and that plaintiff remained the fee owner of the Property. Id., ¶¶43, 44.

Count III alleged slander of title based on the recording of documents on behalf of U.S. Bank that were false and not executed by legally authorized persons. Id., ¶¶46, 47.  Plaintiff claimed that Reiter & Schiller, as agent for and acting at the direction of U.S. Bank, knew or should have known these documents were false because unauthorized persons execute the Notice of Pendency, Power of Attorney and Assignment of Mortgage.  Id., ¶48.

As relief, plaintiff sought a determination of the alleged adverse interests in the property; a declaratory judgment that the Sheriff's Certificate of Sale, Assignments of Mortgage, Notice of Pendency and Powers of Attorney are void; and an order that plaintiff is the fee owner of the property.  Complaint, Prayer for Relief.

Defendant U.S. Bank moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiff's quiet title and slander of title claims failed because her allegations that every relevant mortgage-related document was executed without authority and there are missing mortgage assignments, are conclusory and without support of facts and the law.  Id., pp. 6-14.  As for her declaratory judgment count, because plaintiff's substantive claims failed, her declaratory judgment action must also be dismissed.  Id., p. 14.

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."   Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which

requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ritchie v. St. Louis Jewish Light</u>, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  <u>See</u> <u>Little Gem Life Sciences, LLC v. Orphan Medical, Inc.</u>, 537 F.3d 913, 916 (8th Cir. 2008) (quoting <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); <u>see</u> <u>also</u> Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

## III.   DISCUSSION

### A.   <u>Quiet Title</u>

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In her response to U.S. Bank's motion to dismiss the quiet title claim, plaintiff contended that because her suit originated in state court, all she had to plead was that she was in possession of the Property and U.S. Bank had a claim adverse to her. Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 6-7 [Docket No. 13]. Further, plaintiff maintained that as U.S. Bank had the burden of proof with respect to her quiet title claim – which is a state substantive law right and not a state pleading standard – the federal rules could not be applied in a manner that denied her state substantive law rights. Id., pp. 13-14.

The inference urged by plaintiff – that this Court should apply the Minnesota state court pleading standards to her quiet title claim – is meritless. Plaintiff's counsel has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva)); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit has settled the "burden of proof" argument advocated here by plaintiff. See Karnatcheva, 704 F.3d at 548. As the court explained in Gharwal:

> Karnatcheva rejected that [burden of proof] argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself[7] has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F.Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiffs quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standard governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

The "gist" of plaintiff's quiet title claim is that there are unrecorded assignments and powers of attorney; Giesselmann, Weaver, Brooks, and Pennock lacked the legal authority to sign the assignment of mortgage, powers of attorney and notices of pendency and foreclosure documents; and U.S. Bank lacked the power of sale on the date of the sheriff's sale. These theories fail for a multitude of reasons.

First, mere allegations of a plaintiff's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief. See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse

---

[7]   Both Gharwal and Karnatcheva were represented by William Butler, plaintiff's counsel in the instant case.

claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); see also Yang Mee Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

In the instant case, plaintiff has made wholly unsupported statements about secretly unrecorded assignments and the alleged lack of legal authority by the individuals signing the foreclosure documents.   Complaint, ¶¶8, 18, 20, 22, 40. Plaintiff's pleading of some of these facts on "information and belief," cannot save her Complaint.  Complaint, ¶¶18, 20, 22.  While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11–3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), on the other hand, the Eighth Circuit and courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards described by the Supreme Court in Iqbal and Twombly.   See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ.

No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).

For example, the only "factual" support for plaintiff's claim that there is an unrecorded assignment of her mortgage are three undated pages of an unnamed document attached to her Complaint that plaintiff claims is a PSA that governs U.S. Bank and plaintiff's mortgage. Complaint, Ex. 4. But alleging that an undated excerpt from a PSA establishes that there must be an unrecorded assignment at some point in time, does not make it so. Dunbar v. Wells Fargo Bank, N.A., 853 F. Supp.2d 839, 848 (D. Minn. 2012), aff'd, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo. As a result, dismissal is warranted.").

For the same reason, plaintiff's allegations that Giesselmann, Weaver, Brooks, and Pennock lacked signing authority for the assignment of mortgage or foreclosure-related documents, "do not hold up to even the slightest scrutiny." See Simmer v.

13

HSBC Bank USA, N.A., Civ. No. 13-1549(DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn., May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it

does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted).

Similarly, plaintiff's claim that the foreclosure is void because Wells Fargo did not have the power to act on U.S. Bank's behalf is contradicted by the record.  On August 27, 2009, U.S. Bank executed a Power of Attorney that gave Wells Fargo authority to act as U.S. Bank's attorney-in-fact with respect to plaintiff's mortgage, and this document was recorded in the Hennepin County in the Hennepin County Recorder's office on August 27, 2009.  Defendant's Appendix [Docket No. 7-1], App. 1-3.

In short, contrary to plaintiff's unsupported assertions, the documents referenced in and attached to the Complaint show that there was an unbroken chain of title from North American Mortgage Company to MERS and from MERS to U.S. Bank. Complaint, Exs. 2, 3.  Further, the assignments of mortgage, Notices of Pendency and Powers of Attorney were properly recorded and there is no evidence that these assignments were void for any reason.  The Sheriff's Certificate of Sale, (Complaint, Ex. 8), is prima facie evidence that U.S. Bank (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. Minn. Stat. §580.19.  Plaintiff stated no facts in her Complaint to rebut this evidence and none of the documents attached to her Complaint support a claim any entity other than U.S. Bank owned the mortgage at the time of the foreclosure sale.

Second, even if the PSA did apply to plaintiff's mortgage and there was any truth to plaintiff's speculative statements about the lack of signing authority of Giesselmann

(as to the Assignment of Mortgage), and Weaver, Brooks, and Pennock (as to the Notices of Pendency and Powers of Attorney), plaintiff suffered no injury in fact as a result and, therefore lacks standing to pursue a quiet title claim on this basis.[8]  See Novak, 2012 WL 3638513, at *6, aff'd, 518 F. Appx. 498 (8th Cir. 2013) (dismissing plaintiffs' complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva., 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Sorem, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); Quale, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they

---

[8]     U.S. Bank did not raise standing.   Nevertheless, "[c]ourts are 'obligated to examine standing sua sponte where standing has erroneously been assumed. . . .'" Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Adarand Const., Inc. v. Mineta, 534 U.S. 103, 109 (2001)).

did have standing, their claims are fatally implausible and speculative."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); <u>Kebasso v. BAC Home Loans Servicing, LP</u>, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any

disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object."') (quoting Jackson, 770 N.W.2d at 500); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement. Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

Third, plaintiff's reliance on the Minnesota Supreme Court's decision in Ruiz v. 1st Fidelity Loan Serv., LLC, 829 N.W.2d 53 (Minn. 2013), (Pl. Opp. Mem., pp. 8-10), is misplaced. Ruiz concerned the requirement that assignments of mortgage be recorded before the mortgagee may engage in foreclosure by advertisement. Id. at 57-58. Not only is there no evidence of unrecorded assignments of mortgage, but Ruiz did not change the firmly-established law that plaintiff lacks standing to challenge the foreclosure on the basis of allegedly improperly executed foreclosure documents.

Finally, plaintiff's allegation that the foreclosure was void because the Notice of Pendency was not recorded until after the foreclosure had been commenced (Complaint, ¶9, 40; Pl. Opp. Mem., p. 10), finds no support in the law or facts.

Minn. Stat. § 580.032 states:

> Notice of pendency. A person foreclosing a mortgage by advertisement <u>shall record a notice of the pendency of the foreclosure</u> with the county recorder or registrar of titles in the county in which the property is located <u>before the first date of publication of the foreclosure notice</u> but not more than six months before the first date of publication.

Minn. Stat. § 580.032, subd. 3 (emphasis added).

Here, the December 30, 2011 Notice of Pendency was recorded on January 4, 2012, the first date of publication of the foreclosure sale was January 10, 2012, and the sale was conducted on May 9, 2012.  Complaint, Exs. Ex. 7 (Notice of Pendency), 8 (Sheriff's Certificate of Sale and Foreclosure Record).  Thus, U.S. Bank complied with the requirements set forth in Minn. Stat. § 580.032, subd. 3.

In any event, even if the Notice of Pendency had not been recorded before the first date of publication, Minn. Stat. § 580.032, subd. 3 affords no relief to plaintiff, a homeowner who was personally served with the notice of foreclosure sale.  Complaint, Ex. 8.  As the Eighth Circuit explained in <u>Badrawi v. Wells Fargo Home Mortg., Inc.</u>,

> Badrawi is not among the class whose interests Minn. Stat. § 580.032, subd. 3 was enacted to protect.  Minn. Stat. § 580.032 protects those with "a redeemable interest in real property" by allowing them to "record a request for notice foreclosure ... with the county recorder." Minn. Stat. § 580.032, subd. 1. This provision is most sensibly read to protect the interest of third parties who own a "redeemable interest" in mortgaged property which might be jeopardized if the mortgagor foreclosed without notice. A secondary mortgagor's interest would be at risk, for example, if the primary mortgagor foreclosed on the property and the sale proceeds were insufficient to pay both claims. In that case a secondary mortgagor would require notice before the commencement of foreclosure proceedings in order to protect its interest.
> Homeowners do not require the same particular type of notice protection since a separate Minnesota statute

requires personal service of foreclosure notice to "the person in possession of the mortgaged premises." See Minn. Stat. § 580.03. There is no dispute at this stage that Wells Fargo properly served Badrawi with notice in compliance with Minn. Stat. § 580.03. Since Badrawi received personal service of the foreclosure notice, she could not have been among those for whose benefit the separate notice requirement of Minn. Stat. § 580.032, subd. 3 was enacted. She is accordingly unable to seek relief by challenging Wells Fargo's alleged noncompliance with the statute.

718 F.3d 756, at *4 (8th Cir. 2013) (citation omitted).

For all of these reasons, plaintiff's quiet title claim should be dismissed.

**B.    Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted). To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347

(Minn. 1920).  Additionally, plaintiff must establish that she relied on the alleged false statement.  See Welk, 850 F.Supp.2d at 993-94.

Plaintiff responded to U.S. Bank's motion to dismiss her slander of title claim by merely restating the allegations from the Complaint.  Pl. Opp. Mem., p. 13.  The Court finds the claim must be dismissed because plaintiff has alleged no facts from which this Court could infer that U.S. Bank made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to his property. See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").  Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[9]

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's

---

[9]     The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); See also Ko, 2013 WL 3088728, at *4; Pope v. Fed Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich, 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012).  U.S. Bank did not argue in favor of dismissal based on plaintiff's failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[she is] left with a remedy in search of right." Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012). See also Lara, 2013 WL 3088728, at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[10]

---

[10]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Such is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

## III.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

(1)   Defendant's Motion to Dismiss [Docket No. 4] be **GRANTED.**

(2)   This matter be dismissed with prejudice.

Dated: December 27, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 10, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.